UNITED STATES DISTRICT COURT

DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. 2015-12978-DJC

DIRK GREINEDER,
Petitioner

v.

SEAN MEDEIROS,
Respondent

**REPLY MEMORANDUM OF LAW IN SUPPORT OF
PETITION FOR WRIT OF HABEAS CORPUS**

Respectfully submitted,
**DIRK GREINEDER,**
By his attorney,

/s/ Catherine J. Hinton
Catherine J. Hinton, BBO #630179
Rankin & Sultan
151 Merrimac Street
Boston, MA  02114
(617) 720-0011
chinton@rankin-sultan.com

Dated: August 29, 2016

# TABLE OF CONTENTS

I.   CONTRARY TO THE COMMONWEALTH'S OPPOSITION, GREINEDER IS ENTITLED TO A FEDERAL EVIDENTIARY HEARING, DE NOVO REVIEW, AND HABEAS RELIEF BASED ON THE VIOLATION OF HIS CONSTITUTIONAL RIGHT TO A PUBLIC TRIAL. . . . . . . . . . . . . . . . . . . . . . . . . . . 1

    A.   Contrary to the Commonwealth's Argument, the SJC's Finding that the Courtroom was Not Closed is Not Entitled to Deference. . . . . . . . . . . . . . . 1

    B.   The Procedure in this Case was Not the Functional Equivalent of a Sidebar . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

    C.   Contrary to the Commonwealth's Argument, *De Novo* Review is Required Due to the Failure of the State Court to Consider the *Waller* Factors. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

    D.   Contrary to the Commonwealth's Argument, Greineder Was Deprived of a Fair and Impartial Tribunal. . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

    E.   Contrary to the Commonwealth's Argument, a Federal Evidentiary Hearing is Required.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

II.  CONTRARY TO THE COMMONWEALTH'S OPPOSITION, GREINEDER'S CONFRONTATION RIGHTS WERE VIOLATED BY THE ADMISSION OF DR. COTTON'S TESTIMONY, WARRANTING RELIEF. . . . . . . . . . . . . . . . . . . . . . . . . 11

    A.   Greineder's Claim Has Not Been Procedurally Defaulted.. . . . . . . . . . . . . . . . . 12

    B.   Where Dr. Cotton Parroted Wendy Magee's Reports Regarding DNA Test Results and Never Reviewed the Underlying Unfiltered Data, Her Testimony about Those Test Results Violated Greineder's Constitutional Rights. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

    C.   Contrary to the Commonwealth's Contention, the Improper Admission of Dr. Cotton's Testimony About the DNA Test Results and Their Statistical Significance Substantially Prejudiced Greineder at Trial. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

III. CONTRARY TO THE COMMONWEALTH'S CURSORY AND CONCLUSORY ARGUMENT, GREINEDER RECEIVED CONSTITUTIONALLY-INEFFECTIVE ASSISTANCE OF COUNSEL. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

IV.      CONTRARY TO THE COMMONWEALTH'S CONTENTION, GREINEDER IS
ENTITLED TO DE NOVO REVIEW AND HABEAS RELIEF ON HIS
CONSTITUTIONAL CLAIMS RESULTING FROM THE PRESENTATION OF
FALSE INCULPATORY TESTIMONY AT TRIAL. . . . . . . . . . . . . . . . . . . . . . . . . . . 18

V.       CONTRARY TO THE COMMONWEALTH'S CLAIM, THE ADMISSION AND
EXPLOITATION OF LURID EVIDENCE ABOUT GREINEDER'S
EXTRAMARITAL SEXUAL ACTIVITIES VIOLATED HIS CONSTITUTIONAL
RIGHT TO DUE PROCESS. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

VI.     CONTRARY TO THE COMMONWEALTH'S CLAIM, THE JURY'S BANANA
EXPERIMENT CONSTITUTED EXTRANEOUS INFORMATION, VIOLATING
GREINEDER'S SIXTH AND FOURTEENTH AMENDMENT RIGHTS. . . . . . . . . . 22

VII.    CONTRARY TO THE COMMONWEALTH'S ARGUMENT, GREINEDER'S
CLAIM THAT THE JURY'S EXPOSURE TO EXTRANEOUS INFORMATION
(STAINS ON THE BACK OF GREINEDER'S JACKET) VIOLATED HIS RIGHT
TO TRIAL BY JURY HAS NOT BEEN DEFAULTED. . . . . . . . . . . . . . . . . . . . . . . . 23

CONCLUSION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

I.  **CONTRARY TO THE COMMONWEALTH'S OPPOSITION, GREINEDER IS ENTITLED TO A FEDERAL EVIDENTIARY HEARING, DE NOVO REVIEW, AND HABEAS RELIEF BASED ON THE VIOLATION OF HIS CONSTITUTIONAL RIGHT TO A PUBLIC TRIAL.**

A.  **Contrary to the Commonwealth's Argument, the SJC's Finding that the Courtroom was Not Closed is Not Entitled to Deference.**

The Commonwealth argues that the SJC's finding that the courtroom was not closed to the public during individual *voir dire* is entitled to the presumption of correctness under 28 U.S.C. § 2254(e)(1), and Greineder has not overcome such presumption. (Comm. Mem. pp. 15-16).  The Commonwealth has completely ignored petitioner's argument that the SJC's decision denying his public trial claim was contrary to or an unreasonable application of clearly established federal law pursuant to 28 U.S.C. § 2254(d)(1).  In ruling that the courtroom was not closed, the SJC focused solely on whether or not there had been intentional or "official" exclusion, stating: "The ultimate question of fact before us is **whether there was a court order or other official action** that excluded the public (or media) from the room." *Commonwealth v. Greineder*, 458 Mass. 207, 226 (2010).  That formulation ignored the principle that a courtroom may be closed, **in fact**, even if not intentionally closed by formal court order.  *See, e.g., Presley v. Georgia*, 558 U.S. 210, 214 (2010) ("trial courts are obligated to take every reasonable measure to accommodate public attendance at criminal trials"); *United States v. Negron-Sostre*, 790 F.3d 295, 303 (1st Cir. 2015)("In finding that neither the court nor the deputy marshals had 'ordered' the courtroom to be closed, the district court sidestepped the issue of whether the courtroom had in fact been closed *despite* the absence of any such order"); *Owens v. United States*, 483 F.3d 48, 63 (1st Cir. 2007) (court room closed "because of inattention by the judge" may constitute violation); *Walton v. Briley*, 361 F.3d 431, 433 (7th Cir. 2004)("Whether the closure was intentional or inadvertent is constitutionally irrelevant").  The SJC used an erroneous legal standard by mistakenly insisting upon evidence of a "court order" or other "official action" to establish a courtroom closure; thus its findings are not entitled to deference.

Even if the SJC's findings made under an erroneous legal standard were entitled to AEDPA deference (which petitioner disputes), deference "does not imply abandonment or abdication of judicial review." *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003). *See also Brumfield v. Cain*, 135 S.Ct. 2269 (2015)(finding state court findings unreasonable); *Wiggins v. Smith*, 539 U.S. 510, 527 (2003)(same). As set forth in detail in petitioner's memorandum-in-chief at pp. 54-65, the trial judge at Greineder's 2001 did nothing to alter the longstanding default rule in Norfolk Superior Court (in effect from 1982 to 2010), well-known to attorneys, court officers, and clerks that "what we do is close the courtroom." *Commonwealth v. Cohen*, 456 Mass. 94, 102 (2010).[1]  To the contrary, in this case, after the trial judge conferred with the media as to their interest "in being present" during the "public part" of the case (F.S.A. 01390), he informed the parties on the record that the individual *voire dire* would be held "in a sideroom" for jurors' "private conversations with the Court." (F.S.A. 01392).  He then proceeded to hold the individual *voir dire* in a separate courtroom (Courtroom 8), the public doorway to which was situated up a "narrow steep staircase" that is "so situated that it seldom attracts the general public."  (F.S.A. 01501)

At the outset of the individual *voir dire,* the trial judge stated "The record should reflect that we are in Room 8 for the purposes of conducting a **non-public** individual voir dire of the jurors." *Tr.* I/37 (F.S.A. 01396) (*emphasis added*). He referred repeatedly to the courtroom where counsel had previously introduced themselves as the "open courtroom" in contrast to Courtroom 8 where the "non-public" individual *voir dire* of the jurors was taking place. *Tr.* I/55, 76, 113, 133, 139, 146,

---

[1]     Simultaneously with Greineder's trial, down the hall in the unrelated trial of *Commonwealth v. Holland*, according to an affidavit of Holland's trial counsel, a sign hung on the door during individual *voir dire* stating that the courtroom was closed. 2010 R.104 (F.S.A. 01486).

152, 180, 228, 292; *Tr.* II/55, 123, 137, 203, 229.[2] Moreover, the transcript reveals no "bench conferences" held during proceedings in Courtroom 8, a clear indication that there was no need for such because the courtroom was closed to the public.

In context, whether formally or informally, in accordance with the plain English meaning of the trial judge's words, the courtroom was, *in fact*, closed.  The media understood itself to be excluded; thus, no member of the media entered the room despite the "media frenzy" surrounding the trial.  Instead, members of the media testified that they camped immediately outside the doors to be as close to the proceedings as possible.  A newspaper article about the trial reported that the jury selection process "has been closed to the public." (F.S.A. 01463) Neither Greineder's eldest daughter, Kirsten, nor his son, Colin, was present, as the SJC found, despite their agreement with trial counsel's request that they be present every day of the trial.  A few Commonwealth witnesses believed that Greineder's youngest daughter, Britt, was present, while Britt herself testified unequivocally that she was not. None of the Commonwealth's witnesses could name a single member of the media or public other than Britt who supposedly attended the individual *voir dire*. At best, according to the trial judge, "occasionally, a few unidentified persons who may well have been members of the public were present."  (F.S.A. 01500)  However, the "possible existence of one or two spectators brave enough or arrogant enough to seek admission does not convert the court room into an open one." *Peterson v. Williams*, 85 F.3d 39, 44 n.7 (2nd Cir. 1996); *Commonwealth v. Cohen*, 456 Mass. 94 (2010)(courtroom closure found despite three spectators who "saw the sign, but ignored it").

---

[2]        Petitioner is conferring with opposing counsel and intends to file, within one week, a Motion to Expand Record to include the full transcript of the trial, including the transcript of the individual *voir dire*, as well as the transcripts of all post-trial evidentiary hearings, including the 2010 evidentiary hearing on the public trial issue.

Eight years later, the trial judge claimed that his words ("non-public") did not mean what they said, and that his "intent" was merely to bar "video and still photo media" and to "keep [his] options open to exclude people" if that became necessary. (F.S.A. 01503-01504) The SJC similarly insisted: "The trial judge has now explained his use of the word 'non-public,' stating he never **intended** to exclude the public and he did not order room 8 closed." *Greineder*, 458 Mass. at 227 (*emphasis added*).   However, regardless of his subjective "intent," the trial judge in this case unmistakably gave the appearance of closing the courtroom to anyone who may have wished to attend. *See U.S. v. Negron-Sostre*, 790 F.3d 295, 306 (1st Cir. 2015)("[T]he ultimate responsibility for avoiding 'even the appearance that our nation's courtrooms are closed or inaccessible to the public' lies with the judge.")  It matters not whether there were signs on doors or affirmative denial of entry.  Under all of the circumstances, in light of the trial judge's public comments, actions, and inaction, the courtroom was, in fact, closed.  The notion that the trial judge's subjective "intent" could conceivably outweigh the vast quantity of evidence establishing a closure of the courtroom is ludicrous.  If a trial judge "intends" to provide correct jury instructions, but instead utters erroneous jury instructions, the Court does not look to the judge's "intent" to resolve the matter!  The judge's subjective "intent" is not the issue to be decided, where a closure caused by "inadvertence" or "inattention" is sufficient to make out a violation of the public trial right.  *Presley*, 558 U.S. at 215; *Negron-Sostre*, 790 F.3d at 303; *Owens*, 483 F.3d at 63; *Walton*, 361 F.3d at 433. The state court's ruling to the contrary was an unreasonable determination of the facts in light of the evidence presented pursuant to 28 U.S.C. § 2254(d)(2).

## B.      The Procedure in this Case was Not the Functional Equivalent of a Sidebar.

Although not mentioned in the Commonwealth's Opposition, petitioner is aware of the First Circuit's recent decision in *Wilder v. United States*, 806 F.3d 653 (1st Cir. 2015), decided November

20, 2015.[3]  In *Wilder*, the entire jury venire was first asked a series of questions as a group in open

court.  Those who answered affirmatively then met with the judge one-by-one in the adjacent jury

deliberation room behind the courtroom, not visible to those in the open courtroom, although

spectators could see potential jurors as they left and returned to the open courtroom.  *Id.* at 656.  The

District Court (Casper, J.) upheld this procedure, deeming it to be "essentially 'the functional

equivalent' of a sidebar conference." *Id.* at 657.  A majority of the First Circuit panel (Lynch, J.,

Kayatta, J.) affirmed.  *Id.* at 660-661.  Judge Torruella concurred in the judgment (on grounds that

the issue had been procedurally defaulted),[4] but vehemently rejected the majority's reasoning that

the individual *voir dire* held in a "sideroom" was the "functional equivalent" of a sidebar conference,

and asserted that the majority had understated the importance of public observation of a juror's facial

expressions and body language during sidebar conferences. *Wilder*, 806 F.3d at 661-664.  "[T]o

characterize this event as anything other than a closure is to ignore the egregious facts at issue:

whereas a sidebar is held in open court, where all the public can observe (even if they cannot hear)

the proceedings, here, the most critical portion of voir dire was held behind closed doors." *Id.* at 661

(Torruella, J., concurring), *citing Press-Enterprises Co. v. Sup. Court*, 464 U.S. 501, 507-08 (1984)

(discussing the historical importance of the "open process" in the legal system, which gives the

"assurance to those not attending trials that others were able to observe the proceedings and

enhanced public confidence."); *Owens*, 483 F.3d at 65 ("Judges, lawyers, witnesses, and jurors will

perform their respective functions more responsibly in an open court than in secret proceedings").

---

[3]     The *Wilder* decision was issued four months after petitioner's memorandum-in-chief was filed and nearly four months before the Commonwealth's opposition memorandum was filed.

[4]     There can be no finding of procedural default in this case because the SJC considered Greineder's public trial claim on its merits, finding that "the posture of this issue before us is similar to the review of a decision on a motion for new trial."  *Greineder*, 458 Mass. at 225.

Petitioner asserts that *Wilder* was wrongly decided for the reasons set forth in Judge Torruella's concurrence, while acknowledging that this Court is bound by First Circuit precedent. Nonetheless, this case is clearly distinguishable from *Wilder*.  Unlike *Wilder*, the jurors in this case did **not** go one-by-one from an open courtroom visible to the public briefly into an adjacent side room for individual *voir dire* and then come right back to the open courtroom again.  Instead, jurors went (1) from a non-public jury "stretching out" area;[5] (2) into a non-public hallway between the main courtroom and Courtroom 8 in groups of five jurors lined up on benches;[6] (3) through the non-public back door of Courtroom 8;[7] (4) into Courtroom 8 for what the trial judge called a "non-

---

[5]    The trial judge explained that the first session (main courtroom) in the courthouse was to be used as a "Staging Area #2" and was "not a courtroom for purposes - for jury empanelment, it's going to be a more comfortable place where jurors can stretch out" and to complete questionnaires. *Tr.* 5/18/01 at 36 (F.S.A. 01392). At the outset of the proceeding, the jurors were told that "we would like to give you this room as a room to spread out in... and then we will invite you one at a time into a side room..." *Tr.* 5/21/01 at 5 (F.S.A. 01395).  After jury questionnaires were handed out and the lawyers introduced, the judge and parties left the room; no questions were asked in open court of the entire venire. *Tr.* 5/21/01 at 5-9. At the 2010 hearing on this matter, Court Officer Steven Minkofsky agreed that the main courtroom was used as a place for jurors to "stretch out" while they waited to be called for individual voir dire and while they were "stretching out" there was no judge or clerk present, only a court officer was in attendance, and there were not members of the public sitting with the jurors. *Tr.* 1/15/10 at 27-28.

[6]    As the trial judge found in 2010: "panels of prospective jurors [were] moved from the main courtroom to benches in a corridor behind the courtroom from which jurors would enter the side door of Courtroom 8 where an individual voir dire would take place." F.S.A. 01402. Court Office Elizabeth Collins testified that she took "five jurors at a time from the main courtroom and out them on [a] bench in the back hallway that's between the main courtroom and courtroom eight" where she would "have them seated and just keep everybody together and ask jurors who were being called I would assist them in, and bring the other one out, and basically tell them what to do." *Tr.* 1/15/10 at 14.  Court Officer Steven Minkofsky similarly testified "we lined them up like five at a time and took them out of the main courtroom" where they were seated on a bench in the corridor. *Tr.* 1/15/10 at 19, 33-34. The trial judge concluded that the public corridor between the rear door of Room 8 and the two rear doors of the main courtroom was "not accessible to the public during the individual *voir dire*." F.S.A. 01501.

[7]    Court Officer Steven Minkofsky testified that the back door that entered the hallway running between the main courtroom and courtroom 8 was "just for the jurors," "nobody else was (continued...)

public" individual *voir dire* which, as explained in Part A above and in petitioner's memorandum in chief at pp. 54-65, based on the trial judge's public comments, actions, and inactions, was *in fact* closed to the public; and then (5) back through the non-public back door of Courtroom 8 to the non-public hallway to the non-public "stretching out" room.  This procedure went on for 1½ days. (F.S.A. 01404) *Cf. Owens*, 483 F.3d at 63 ("[T]his was not a mere fifteen or twenty-minute closure; rather Owens' trial was allegedly closed to the public for an entire day while jury selection proceeded.") Accordingly, the individual *voir dire* held in this case cannot be said to have been held in a manner that was the "functional equivalent" of a sidebar conference.  To characterize such a "non-public" procedure in which individual *voir dire* was held completely outside of the public's view and earshot, both coming and going, as the "'functional equivalent' of a sidebar conference" would stretch *Wilder* beyond its breaking point.

###    C.    Contrary to the Commonwealth's Argument, *De Novo* Review is Required Due to the Failure of the State Court to Consider the *Waller* Factors.

The Commonwealth claims that there should be no *de novo* review because the SJC  found that there was no courtroom closure. (Comm. Mem. pp. 16-17).  Here, again, the Commonwealth has utterly ignored petitioner's argument that under clearly established federal law, a courtroom closure **in fact** is sufficient to constitute a violation of the right to a public trial; there need not be any "court order" or "official action," as claimed by the SJC.  Since the SJC's decision was based on the wrong legal standard and was an unreasonable determination of the facts, no deference is required. Since it is beyond doubt that the factors required to be addressed under *Waller v. Georgia*, 467 U.S. 39, 46 (1984) to support a courtroom closure were never addressed by the state court, *de novo* review is warranted. *See Cone v. Bell*, 556 U.S. 449, 472 (2009)("Because the Tennessee courts

---

[7](...continued)
allowed to walk in through that doorway." *Tr.* 1/15/10 at 19, 33-34.

did not reach the merits of Cone's *Brady* claim...the claim is reviewed *de novo*); *Johnson v. Williams*, 133 S.Ct. 1088 (2013).  Any post-hoc justifications based on the trial judge's later claimed reasons (*e.g.*, convenience of the parties to avoid standing in high temperatures, etc.) cannot excuse the closure, as such findings must be made during the jury selection itself. *Presley v. Georgia*, 558 U.S. 209, 213 (2010)("*Waller* provided standards for courts to apply before excluding the public from any stage of a criminal trial"); *United States v. Gupta*, 699 F.3d 682, 687 (2nd Cir. 2012)(refusing to consider a later-filed affidavit "because the court made no explicit findings *before* closing the courtroom")(*emphasis in original*); *Owens*, 483 F.3d at 62 ("[A] court must consider (and reject) alternatives to closure before barring public access").

### D.  Contrary to the Commonwealth's Argument, Greineder Was Deprived of a Fair and Impartial Tribunal.

The Commonwealth claims that the SJC's denial of petitioner's motion to recuse prior to the evidentiary hearing used the "correct standard" and is therefore purportedly unassailable.  (Comm. Mem. pp. 17-18).  However, the SJC ruled that the trial judge "examined his own conscience (with penetrating self-awareness) and concluded that he could be fair and impartial" and that "there was no evidence of bias or prejudice from an extrajudicial source." *Greineder*, 458 Mass. at 394.  This legal standard is contrary to clearly established Supreme Court law, which asks "not whether a judge harbors an actual subjective bias, but instead whether, as an objective matter, 'the average judge in his position is 'likely' to be neutral, or whether there is an unconstitutional 'potential for bias'." *Williams v. Pennsylvania,* 136 S.Ct. 1899, 1905 (2016) (citing *Caperton v. A.T. Massey Coal Co., Inc.,* 556 U.S. 868, 881 (2009)).  Due process guarantees "an absence of actual bias" on the part of the judge. *Williams*, 136 S.Ct. at 1905.  Moreover, bias derived from an extrajudicial source "is not a necessary condition for 'bias or prejudice' recusal." *Liteky v. United States*, 510 U.S. 540 (1994).

A judge must withdraw where he acts as part of the accusatory process, *In re Murchison*, 349 U.S. 133, 136 (1955); or becomes "so enmeshed in mattered involving [a litigant] as to make it inappropriate for another judge to sit." *Johnson v. Mississippi*, 403 U.S. 212, 215-216 (1971).  The correct test is whether the adjudicator's situation "might lead him not to hold the balance [between the parties] nice, clear and true." *Tumey v. Ohio*, 273 U.S. 510, 532 (1927).

As set forth in detail in Greineder's memorandum-in-chief at pp. 46-50, the facts in this case demonstrate that the trial judge prejudged the issues (as documented in his first written response to the SJC) before considering anything other than his own untested memory, presided over an evidentiary hearing about a matter as to which he was a percipient witness (the only one not subject to cross-examination), contacted a potential witness (his former law clerk) over whom he had a supervisory relationship, interviewed her, shared his own memories with her, and provided her with a detailed memorandum regarding his recollections, and then advised her as to her response to a defense request for information, thus assuming the role of an advocate.   It should be noted that in *Wilder,* 806 F.3d at 656, a case tried by Judge O'Toole, the case was reassigned to Judge Casper "so that Judge O'Toole could serve as a fact witness concerning the conduct of the voir dire." *Wilder*, 806 F.3d at 656.  In this case, instead of Judge Chernoff presiding over a hearing in which he was also a factual witness (the only one not sequestered or subjected to cross-examination), a similar recusal should have occurred.  As the First Circuit has stated: "[T]here is no question that it is 'improper for the judge to assume the role of a witness'..." *United States v. Ayala-Vazquez*, 751 F.3d 1, 24 (1st Cir. 2014), citing *Glasser v. United States*, 315 U.S. 60, 88 (1942).[8] When viewed under

---

[8]     *See In re Murchison*, 349 U.S. 133 (1955)(violation of due process where "the judge whom due process requires to be impartial in weighing the evidence presented before him, called on his own personal knowledge and impression of what had occurred...and his judgment was based in part on this impression, the accuracy of which could not be tested by adequate cross-
(continued...)

the proper legal standard, it is clear that petitioner was deprived of a fair and impartial tribunal.

### E. Contrary to the Commonwealth's Argument, a Federal Evidentiary Hearing is Required.

The Commonwealth claims that AEDPA's limitations on evidentiary hearings in federal habeas proceedings bar petitioner from the right to an evidentiary hearing as to his public trial claim because that claim was already subject to an evidentiary hearing in state court, and the SJC adjudicated facts based on that hearing. (Comm. Mem. pp. 18-20). The Commonwealth is wrong. Contrary to the Commonwealth's argument, 28 U.S.C. § 2254(e)(2) does not operate to prohibit an evidentiary hearing in this case because petitioner did not "fail[] to develop the factual basis of the claim in State court proceedings..." The problem here was not that petitioner failed to diligently develop the factual basis of the claim; the problem was instead that the trial judge was not impartial in deciding the claim, as explained above, so the state court evidentiary hearing was not "full and fair."[9] A federal evidentiary hearing is still required where the state court evidentiary hearing was

---

[8](...continued)
examination"); *Hurles v. Ryan*, 752 F.3d 768, 789 (9th Cir. 2014)("Instead of providing a forum for Hurles to present and develop evidence to establish his claim, Judge Hilliard 'found' facts based on her own recollections and factual assertions about her conduct...In effect she testified through her order denying [petitioner's claim]. Hurles had no opportunity to challenge Judge Hilliard's own claimed memory and understanding of events which had taken place years prior. This procedure is inherently inadequate to evaluate the merits of Petitioner's claim. In fact, it is not a procedure at all."); *Buffalo v. Sunn*, 854 F.2d 1158, 1165 (9th Cir.1988) (court erred in relying on personal knowledge to resolve a disputed factual issue); *United States v. Nickl*, 427 F.3d 1286, 1293 (10th Cir.2005) ("While a judge may comment on proceedings, he may not assume the role of a witness. A judge may analyze and dissect the evidence, but he may not either distort it or add to it."); *Hickerson v. Maggio*, 691 F.2d 792, 795 (5th Cir.1982) (trial judge's opinion as to question of fact was "but his own statement, unsupported by oath and untested by cross-examination"; "[q]uestions of fact can be resolved only by an evidentiary hearing at which the witnesses, whatever their station, testify in the traditional manner."); *Tyler v. Swenson*, 427 F.2d 412, 415 (8th Cir. 1970) ("It has long been recognized...that a judge cannot serve as a material witness as well as a trier of fact.").

[9]   *See, e.g., Murchu v. United States*, 926 F.2d 50, 57 n.12 (1st Cir.), cert denied, 502 U.S. 828 (1991)(district judge erred in summarily dismissing prisoner's section 2255 motion (continued...)

not "full and fair" under *Townsend v. Sain*, 372 U.S. 293, 313 (1963), modified in part by *Keeney*

*v. Tamayo-Reyes*, 504 U.S. 1, 5 (1992). *See, e.g., Avila v. Richardson*, 751 F.3d 534, 537-38 (7th Cir.

2014)(remanding for federal evidentiary hearing because state court's analysis was "contrary to

clearly established federal law under section 2254(d) and because "pre-AEDPA standard" for

granting hearing – which applies "[b]ecause a hearing was not barred by §2254(e)" – has been

satisfied by "allegations, [that] if proved, could warrant relief" and showing that "[f]or reasons

outside Avila's control...the state courts never gave his claim a full and fair hearing.").

## II. CONTRARY TO RESPONDENT'S OPPOSITION, GREINEDER'S CONFRONTATION RIGHTS WERE VIOLATED BY THE ADMISSION OF DR. COTTON'S TESTIMONY, WARRANTING RELIEF.

The Commonwealth has three principal responses to Greineder's argument that the

inculpatory testimony of Dr. Robin Cotton ("Cotton") about DNA test results violated his

constitutional right of confrontation under the Sixth and Fourteenth Amendments. First, it claims

(at pp. 22-25) that the argument was procedurally defaulted. Second, it insists (at pp. 26-28) that

Cotton was testifying to her "independent opinion," rather than serving as a mere conduit for the

---

9(...continued)
challenging judge's own conduct as improper attempt to coerce a guilty plea, further factual inquiry deemed necessary and "to avoid any appearance of impropriety, the matter should be ...assigned to a different judge"); *McKenzie v. Risley*, 915 F.2d 1396, 1397-98 (9th Cir. 1990)(rejecting state trial judge's determination, federal court orders hearing to assess whether state judge's *ex parte* meeting with prosecutor prior to sentencing prejudiced defendant); *Anderson v. Jones*, 743 F.2d 306, 308 (5th Cir. 1984)(because genuine issue was raised as to sentencing judge's understanding of range of discretion, that judge's explanation during state postconviction of the meaning of his own remarks at sentencing did not obviate need for a federal hearing); *Tyler v. Swenson*, 427 F.2d 412, 415 (8th Cir. 1970)(federal evidentiary hearing should have been granted because hearing in state court was not "full" or "fair" where state judge relied on his own memory of prior proceedings and did not allow himself to be cross-examined); *Springfield v. Singh*, 2012 WL 2412097 (C.D. Cal. Apr. 30, 2012) (federal habeas court considered additional evidence due to deficiencies in the state court fact-finding process where state court judge ruled on the basis of his own recollection and observations without petitioner having a right to cross-examine him), report and recommendation adopted, 2012 WL 2410693 (C.D. Cal. June 22, 2012).

findings and conclusions of DNA analyst, Wendy Magee.  Finally, it argues (at pp. 28-30) that any constitutional error was harmless and thus does not warrant habeas relief.  As demonstrated below, the Commonwealth is wrong on all three counts.

**A.    Greineder's Claim Has Not Been Procedurally Defaulted**.

The Commonwealth claims that petitioner did not object to the admission of Cotton's so-called "opinion" testimony at trial, which resulted in the SJC ruling in *Commonwealth v. Greineder*, 458 Mass. 207, 236 (2010) that he had forfeited the claim. *Comm. Mem.* at 25.  However, in 2012, following the SJC's 2010 affirmance of Greineder's conviction, the United States Supreme Court granted Greineder's petition for certiorari, vacated the 2010 judgment, and remanded the case to the SJC for reconsideration of Greineder's confrontation claim in light of *William v. Illinois*, 132 S.Ct. 2221 (2012).  After a new round of briefing and oral argument, the SJC issued a lengthy decision on the merits, reaffirming its long-standing bifurcation of expert "opinion" evidence and the factual basis of such an opinion, and again affirming Greineder's conviction.  *Commonwealth v. Greineder*, 464 Mass. 580 (2013).  The court held that such "opinion" evidence does not violate a defendant's constitutional right of confrontation under the Sixth Amendment, *Id.* at 585-595, and specifically held that the admission of Cotton's so-called "opinion" testimony "did not violate [Greineder's] confrontation right" in this case.  *Id.* at 598. Nowhere in its 2013 decision did the SJC claim that Greineder had not adequately preserved the constitutional issue; nowhere in its protracted discussion of the governing legal principles or their application in this case did the SJC's 2013 decision suggest that it was not engaged in plenary review or making a ruling on the merits of Greineder's constitutional claim.  It clearly did reach and adjudicate the merits.

Under the circumstances, the Commonwealth's contention that this constitutional claim is unavailable for habeas review borders on the frivolous.  Surely, the SJC made it "reasonably clear

that its reasons for affirming [Greineder's] conviction rest upon its view of federal law." *Tart v. Commonwealth of Massachusetts*, 949 F. 2d 490, 496 (1st Cir. 1991).   Surely, the state court's decision "fairly appear[s] to rest primarily on federal law or [is] interwoven with [federal] law." *Ylst v. Nunnemaker*, 501 U.S. 797, 802 (1991).   The Commonwealth's conclusory assertion that the SJC's decision on remand "does not affect the default of this claim" and that the SJC was "simply responding to the question raised by the Supreme Court," Comm. Mem. at 25, are unsupported by any citation to authority or by the language of the SJC decision itself.[10]   Accordingly, this Court should reject the procedural default argument and proceed, as did the SJC, to address the merits of Greineder's Confrontation Clause claim.

### B.   Where Cotton Parroted Magee's Reports Regarding DNA Test Results and Never Reviewed the Underlying Unfiltered Data, Her Testimony about Those Test Results Violated Greineder's Constitutional Rights.

In baldly asserting that "Dr. Cotton offered her own independent opinion and was not merely a conduit," Comm. Mem. at 27, the Commonwealth ignores the undisputed facts that during her

---

[10]   Even if the 2013 decision had revived the claim made in its vacated 2010 judgment that Greineder had somehow failed to object to Cotton's "opinion" testimony (which it did not), the adequacy of a state's procedural bar to the assertion of a federal question is, itself, a federal question, *see Douglas v. Alabama*, 380 U.S. 415, 422 (1965).   Procedural default self-evidently is limited to cases in which a "default" actually occurred.   *Coleman v. Thompson*, 501 U.S. 722, 750 (1991). Where a state court has made a determination of procedural default despite clear record evidence that a petitioner has complied with the state's procedural rules, that determination will not serve as an adequate state-law ground to bar relief.   *See e.g. Williams v. Lane*, 826 F.2d 654, 660 (7th Cir. 1987). A determination of procedural default would be an unreasonable determination of the facts under 28 U.S.C. § 2254(d)(2) in this case in light of the SJC's bogus distinction between the random match probability statistics (which it characterized as "opinion") and the allele calls (which it characterized as "fact").   As set forth in detail in petitioner's memorandum-in-chief at pp. 70-115, no such distinction can properly be made. The plain language of trial counsel's objection ("I would like to register my objection to Doctor Cotton testifying about the data in this case given the fact that she hasn't done any of the work on it." *Tr.* XI/208; 2012 R.71 (F.S.A. 01589) was sufficient to preserve the issue. *See, e.g., Davis v. Washington*, 547 U.S. 813, 820 (2006) (defense counsel's objection to victim's signed affidavit, "That doesn't give us the opportunity to cross-examine [the] person who allegedly drafted it.   Makes me mad," sufficient to preserve defendant's Sixth Amendment objection).

direct testimony, she impermissibly repeated the full details regarding the DNA test results and their statistical significance precisely as documented in the written testimonial reports set forth by Wendy Magee. Cotton's purportedly independent "opinions" about the statistical significance of Magee's test results not only exactly parroted those results, but were presented to the jury during two days of testimony inextricably intertwined with the inadmissible hearsay as to Magee's allele calls. Cotton's testimony explicitly offered all of Magee's results -- from allele calls to statistical calculations -- for their truth, not as the unreported basis of an independent opinion.

Not only had Cotton not participated in any way in performing these DNA analyses or their technical reviews, as the SJC noted, 464 Mass. at 595 n. 16, Cotton did not review the unfiltered data which would have put her "in the best position to formulate an independent opinion and to respond to questions concerning the risk that evidence was fabricated or manipulated." Indeed, a constitutional violation here must be found based on the Supreme Court's analysis in *Bullcoming v. New Mexico*, 564 U.S. 647, 660 (2011)("Could an officer other than the one who saw the number on the house or gun present the information in court - - so long as that officer was equipped to testify about any technology the observing officer deployed and the police department's standard operating procedures? As our precedent makes plain, the answer is emphatically 'No'." (*Citing Davis v. Washington*, 547 U.S. 813, 826 (2006)). As set forth in detail in petitioner's memorandum-in-chief at pp. 70-115, Cotton presented no independent opinion about the DNA test results or their statistical significance; her surrogate testimony clearly violated Greineder's constitutional right of confrontation; and the SJC's determination to the contrary was both contrary to and an unreasonable application of clearly-established federal law.

**C.     Contrary to the Commonwealth's Contention, the Improper Admission of Dr. Cotton's Testimony About the DNA Test Results and Their Statistical Significance Substantially Prejudiced Greineder at Trial.**

The Commonwealth contends (at pp. 28-30) that any constitutional error was harmless since Cotton was subject to extensive cross-examination about Cellmark's DNA testing procedures and about some aberrant test results that did not inculpate Greineder.  Missing from the Commonwealth's analysis, however, is the fact that the inculpatory DNA test results obtained by Magee and reported by Cotton were the linchpin of the prosecution's case against Greineder at trial. The Commonwealth went to great lengths to introduce Magee's results, step-by-step, in excruciating detail.  Copies of this prejudicial hearsay were presented as chalks, which the SJC found to be error. During their deliberations, the jurors twice specifically requested – and received– those same DNA charts to assist them in reaching their verdict. Cotton's testimony increased the credibility of Magee's results by adding a fictional imprimatur of DNA "infallibility."  This evidence was critical to Greineder's conviction, and the prosecution's case would have been far weaker without it. Moreover, while Cotton was cross-examined, she could not be asked about Magee's allelic calls or the decisions Magee made to filter out some electropherogram peaks, but not others, since she had never reviewed the raw data.  In sum, the improper admission of Cotton's testimony in violation of Greineder's constitutional right of confrontation had a substantial and injurious effect on the jury's verdict. Habeas relief is warranted.

**III.    CONTRARY TO THE COMMONWEALTH'S CURSORY AND CONCLUSORY ARGUMENT, GREINEDER RECEIVED CONSTITUTIONALLY-INEFFECTIVE ASSISTANCE OF COUNSEL.**

In his previously-filed memorandum, Greineder detailed his trial counsel's inexcusable failure to seek to exclude or challenge at trial Cellmark's scientifically-unreliable, invalid DNA test results which formed the linchpin of the Commonwealth's circumstantial case.  Greineder also

addressed his counsel's inexplicable failure to move to suppress an inadmissible receipt for nails or the fruits of a warrantless search of his parked Toyota automobile, which were both exploited by the Commonwealth at trial.   Taken together, Greineder maintained, these blunders deprived him of effective assistance of counsel, as guaranteed by the Sixth and Fourteenth Amendments to the Constitution. Greineder explained at length why the decision of the Massachusetts Supreme Judicial Court affirming the trial judge's denial of relief constituted an objectively unreasonable application of *Strickland v. Washington*, 466 U.S. 668 (1984) and its progeny.

AEDPA deference "does not imply abandonment or abdication of judicial review." *Miller-El*, 537 U.S. at 340; *see also Brumfield*, 135 S.Ct. at 2277 (state court's critical factual determinations were unreasonable); *Wiggins*, 539 U.S. at 527 (same). Yet, in response to petitioner's extensively supported argument, the Commonwealth merely parrots the findings of the trial judge as upheld by the Supreme Judicial Court, characterizing those findings as objectively reasonable without explaining why. *Comm. Mem*, pp. 32-37.   This conclusory response simply avoids addressing the merits of Greineder's arguments and is insufficient for this Court's review.  With respect to the admissibility of the DNA evidence, the Commonwealth fails to explain how Cellmark's low copy number ["LCN"] test results could have been deemed sufficiently reliable to be admitted at trial where Cellmark: (1) failed to conduct proper validation studies; (2) employed flawed interpretation guidelines which vested unfettered discretion in the analyst to make allelic calls; and (3) utilized biased and unscientific statistical analysis.  Further,  the Commonwealth fails to show (or even try to show) that any of trial counsel's purported reasons for failing to file a pretrial motion to exclude the DNA test results withstands scrutiny.

In defending trial counsel's treatment of the DNA evidence at trial, the Commonwealth simply intones the SJC's determination that the trial judge did not abuse his discretion in

characterizing trial counsel's performance as not manifestly unreasonable, without explaining why. *Comm. Mem*, pp. 33-34.   The Commonwealth fails to explain how counsel could have made a strategic decision not to call an expert in DNA statistics at trial without bothering to consult with such an expert. Significantly, the Commonwealth does not even try to dispute the conclusions of Greineder's post-conviction statistical expert, Dr. Brenner, that Cellmark's statistical analysis of its test results, presented to the jury through Dr. Cotton, "violated basic scientific principles and unfairly biased the statistical results against the defendant." *Brenner Aff*. 9 (2009 R.266).[11]   Under the circumstances, the failure of trial counsel to challenge this critical, inculpatory evidence at trial cannot be justified as a reasonable tactical decision, and the SJC's finding to the contrary constituted an unreasonable application of the *Strickland* test.

As for counsel's failure to move to suppress the nails receipt that was seized under an impermissible general warrant, or his failure to move to suppress the fruits of the warrantless search of the Toyota Avalon, the Commonwealth does not contend that either motion would properly have been denied, if filed.  Rather, the Commonwealth simply relies on the state courts' finding that the admission of such evidence at trial did not result in prejudice sufficient to warrant relief.  *Comm. Mem*., pp. 34-36.  That, determination, however, was a manifestly unreasonable application of the *Strickland* test in light of the evidence presented at trial.  In his closing argument, the prosecutor argued that the nails receipt was important because it arguably linked Greineder to the purchase of a hammer which may have been the murder weapon.  As for the fruits of the Commonwealth's unlawful search of the Toyota Avalon, Detective McDermott's testimony about the towel she saw

---

[11]      Several pages of Dr. Brenner's affidavit (as well as the first page of Dr. Bodziak's affidavit) appear to be missing from the Commonwealth's Further Supplemental Answer (*see* F.S.A. 00620-00623). Petitioner is conferring with opposing counsel and intends to file, within one week, a Motion to Expand Record to include, *inter alia*, these missing pages.

there weakened Greineder's trial defense of DNA transfer and significantly undermined his credibility.  In a circumstantial case such as this, the improper admission of these pieces of evidence has a substantial and injurious effect on Greineder's trial defense.  The SJC's finding to the contrary was objectively unreasonable, so relief is warranted.

## IV.  CONTRARY TO THE COMMONWEALTH'S CONTENTION, GREINEDER IS ENTITLED TO DE NOVO REVIEW AND HABEAS RELIEF ON HIS CONSTITUTIONAL CLAIMS RESULTING FROM THE PRESENTATION OF FALSE INCULPATORY TESTIMONY AT TRIAL.

Greineder contended in state court and before this Court that Sgt. Rebeiro's presentation of false testimony at trial regarding an alleged heelmark found near Ms. Greineder's body and her failure to correct that false testimony until after the trial violated his federal constitutional right of due process, including his right to the timely disclosure of exculpatory evidence and his right against conviction based upon false evidence.  The trial judge explicitly refused to address those constitutional claims, instead addressing Rebeiro's post-trial recantation solely under the non-constitutional rubric of newly-discovered evidence, and the SJC affirmed.  The Commonwealth now takes the position that this non-constitutional analysis should be treated as an adjudication of the merits of Greineder's constitutional claims, and that habeas relief is not warranted.  *Comm. Mem.*, pp. 38-42.  The Commonwealth is wrong on both counts.

The Commonwealth cites a number of First Circuit decisions for the unremarkable proposition that a court can reach the merits of a federal constitutional claim without necessarily citing federal precedent.  *Comm. Mem.*, p.39.  Yet those very decisions recognize that unless the substance of the federal constitutional claims were actually reached, the petitioner is entitled to de novo review in federal court.  "The real question is not whether the state court opinion cited to any federal cases, but whether the opinion addresses a fairly raised federal issue."  *Clements v. Clarke,*

592 F.3d 45,54 (1ˢᵗ Cir. 2010). "Were we to find that the state court had relied solely on state standards that did not implicate federal constitutional issues, we would review the matter de novo." *Id.* at 53. *See also Teti v. Bender*, 507 F.3d 50,56 (1ˢᵗ Cir. 2007)(Matter adjudicated on the merits if there is a decision "based on the substance of the claim advanced....").

Here, the trial judge overtly refused to adjudicate Greineder's constitutional claims based upon Sgt. Rebeiro's presentation of false, inculpatory testimony at trial.  Ignoring the legal irrelevance of "bad faith" (*see United States v. Agurs*, 427 U.S. 97, 110 (1976); *Brady v. Maryland*, 373 U.S. 83, 87 (1963)), the trial judge stated that: "[b]ecause there is neither a hint of wrongdoing nor of bad faith, the Court does not feel compelled to impose a strict due process standard of review," application of which  the trial judge candidly recognized, "might well result in an order for a new trial." 2009 R 972 (F.S.A. 01306).  Instead, the trial judge considered Rebeiro's post-trial recantation under the far more forgiving (to the Commonwealth) rubric of newly-discovered evidence, and the SJC affirmed the trial judge's denial of relief under the highly-deferential abuse of discretion standard.  Through this procedural sleight-of-hand, Greineder was effectively deprived of having his federal constitutional claims adjudicated in state court.

On the basis of this sequence of events, and because the state law newly discovered evidence standard did not subsume the federal standard, the presumption under *Harrington v. Richter*, 562 U.S. 86, 784 (2011) that the state court adjudicated the federal claim on the merits has been effectively rebutted.  *See Johnson v. Williams*, 133 S.Ct. 1088, 1091 (2013)(presumption is rebuttable); *Dennis v. Secretary, Pennsylvania Dept. Of Corrections*, 2016 WL 4440925, *13 (3ʳᵈ Cir. August 23, 2016)("when the state court pens a clear, reasoned opinion, federal habeas courts may not speculate as to theories that 'could have supported' the state court's decision"); *Wooley v. Rednour*, 702 F.3d 411, 421 (7ᵗʰ Cir. 2012)("[i]t would be perverse, to say the least, if AEDPA

deference required this court to disregard a state's expressed rationale for a decision"). The state court here explicitly eschewed conducting a federal constitutional analysis in favor of a less rigorous state law rubric. Greineder is entitled to de novo review of his claim. Since the constitutional error was clearly not harmless beyond a reasonable doubt, *Chapman v. California*, 386 U.S. 18 (1967), Greineder is entitled to relief.

Even if this Court does not review these constitutional claims *de novo*, Greineder is still entitled to habeas relief. Contrary to the Commonwealth's claim of lack of prejudice (Comm. Mem. pp. 40-42), based upon the central importance of the heelprint testimony to the prosecution's case at trial, there is at least a reasonable probability that the verdict would have been different had this false evidence been withdrawn or corrected in a timely manner. There is little doubt that, had the Commonwealth footprint expert, Rebeiro, authored her affidavit correcting her mistaken identification of the toe print as a heel print prior to trial, and had that affidavit been inadvertently mislaid by the prosecution and not turned over to the defendant, this would have constituted a grave constitutional violation under *Brady v. Maryland*, 373 U.S. 83 (1963), and its progeny. It would be truly anomalous if the petitioner in that scenario were entitled to a new trial, while Greineder is denied relief because the same affidavit was not produced until after trial. Petitioner was convicted at least in part because of this false inculpatory evidence presented at trial, while the true facts were not presented to the defense until after the trial. To the extent that the SJC's failure to find prejudice (under a different legal standard) can be deemed to constitute a rejection of Greineder's constitutional claims, that failure constituted an unreasonable application of clearly-established federal law.

## V.   CONTRARY TO THE COMMONWEALTH'S CLAIM, THE ADMISSION AND EXPLOITATION OF LURID EVIDENCE ABOUT GREINEDER'S EXTRAMARITAL SEXUAL ACTIVITIES VIOLATED HIS CONSTITUTIONAL RIGHT TO DUE PROCESS.

The Commonwealth does not dispute that erroneous evidentiary rulings that render a criminal trial fundamentally unfair may violate a defendant's right to constitutional due process.  However, the Commonwealth argues that the trial judge exercised his discretion in admitting evidence about Greineder's extramarital sexual activities on the issue of motive, and that the SJC properly upheld that exercise of discretion.  *Comm. Mem.*, pp. 42-44.  Accordingly, the Commonwealth concludes, there was no reason for the SJC to reach the question of prejudice.  *Id.* at 44.  The Commonwealth's opposition does not even mention petitioner's prosecutorial misconduct claim.

Yet the Commonwealth, like the SJC, ignores the total absence of any evidence of hostility between Greineder and his wife prior to her death.  There was no evidence that he had threatened her or that she was planning (or threatening) to leave him.  Under those circumstances, lurid details of Greineder's marital infidelity was not at all relevant to the issue of motive and served no purpose other than to besmirch his character and poison the jury against him.  The erroneous admission of this extensive bad character evidence was so prejudicial as to render the trial fundamentally unfair.  Contrary to the Commonwealth's claim, its deliberation elicitation and exploitation of this irrelevant, unfairly prejudicial evidence rendered the trial fundamentally unfair, in violation of Greineder's constitutional right to due process.  *See Dowling v. United States*, 493 U.S. 342, 352 (1990).  Moreover, the over-the-top, pervasive repetition of lurid details (including evidence about prostitutes, group sex, and sadomasochism presented through numerous witnesses) and the abandonment of the claimed nexus to any theory of motive in the prosecutor's closing argument was indicative of the prosecution's intentional misconduct in seeking to destroy petitioner's character.

*See Gumm v. Mitchell*, 775 F.3d 345, 379-385 (6th Cir. 2014)(evidence of defendant's alleged bizarre sexual activities improperly injected to inflame jury; *habeas* relief granted).  The SJC's finding to the contrary constituted an unreasonable determination of the facts adduced at trial. This toxic, improper evidence likely contributed significantly to the jury's verdict, warranting habeas relief.

## VI.   CONTRARY TO THE COMMONWEALTH'S CLAIM, THE JURY'S BANANA EXPERIMENT CONSTITUTED EXTRANEOUS INFORMATION, VIOLATING GREINEDER'S SIXTH AND FOURTEENTH AMENDMENT RIGHTS.

While acknowledging that the Sixth Amendment precludes trial jurors from relying upon information obtained outside the courtroom, the Commonwealth relies upon the finding of the trial judge (affirmed by the SJC)  that the experiment the jurors conducted during their deliberations involving a banana and one of the work gloves allegedly worn by the perpetrator did not constitute extraneous information. *Comm. Mem.*, pp.45-48.  Yet the "transfer exemplar" (2009 R.779)(F.S.A. 01113) created by the Greineder jury was new, extraneous "evidence," unfiltered by either expert opinion or cross-examination.  This violated Sixth Amendment confrontation rights and was not at all like the reenactments employed by deliberating jurors in the two federal cases the Commonwealth cites, *Kurina v. Thieret*, 853 F.2d 1409,1413-1414 (7th Cir. 1988) and *Fletcher v. McKee*, 355 Fed. Appx. 935 (6th Cir. 2009).  Rather, this was new, extrinsic information which filled in a gap in the Commonwealth's proof by linking Greineder's jacket to the work glove, far more akin to the unauthorized jury experiments warranting habeas relief in cases such as *Marino v. Vazquez*, 812 F.2d 499 (9th Cir. 1987)(relief granted where juror conducted experiment testing accuracy of defense witness's claim that it would be impossible to fire handgun held in a certain position); *Jennings v. Oku*, 677 F.Supp. 1061, 1062 (D. Haw. 1988)(relief required where entire jury conducted experiment aimed at discerning which party's version of how defendant's fingerprints were placed on victim's car door was correct).  The SJC's refusal to characterize this as extraneous information raising a

presumption of prejudice constituted an unreasonable application of settled Supreme Court precedent in *Turner v. Louisiana*, 379 U.S. 466, 472-73 (1965) and *Parker v. Gladden*, 385 U.S. 363, 364 (1966). Relief is warranted.

**VII. CONTRARY TO THE COMMONWEALTH'S ARGUMENT, GREINEDER'S CLAIM THAT THE JURY'S EXPOSURE TO EXTRANEOUS INFORMATION (STAINS ON THE BACK OF GREINEDER'S JACKET) VIOLATED HIS RIGHT TO TRIAL BY JURY HAS NOT BEEN DEFAULTED AND ENTITLED HIM TO RELIEF.**

The Commonwealth claims that the single justice "gatekeeper" decision denying leave to appeal constitutes a procedural default. (Comm. Mem. 48). The Commonwealth is wrong. A single justice's finding of a lack of substantiality does not preclude habeas relief. *See Lee v. Corsini*, 777 F.3d 46, 56 (1st Cir. 2015) (single justice's determination that an issue is "new" but not "substantial" does not preclude habeas review on the merits). While it is true that Justice Spina found the issue to be neither "new" nor "substantial," the finding of lack of "newness" was based on an unreasonable determination of the facts in light of the evidence presented in the state court under 28 U.S.C. §2254(d)(2). Where state court factfindings are not supported by the record, the federal court on *habeas* review need not defer to them, and the petitioner can rebut the presumption of correctness pursuant to Section 2254(e)(2) by clear and convincing evidence. *See Wiggins*, 539 U.S. at 527; *Miller-El*, 537 U.S. at 340.

The adequacy of a state's procedural bar to the assertion of a federal question is, itself, a federal question. *Douglas v. Alabama*, 380 U.S. 415, 422 (1965). Where a state court has made a determination of procedural default despite clear record evidence that a petitioner has complied with the state's procedural rules, that determination will not serve as an adequate state-law ground to bar relief. *See e.g. Williams v. Lane*, 826 F.2d 654, 660 (7th Cir. 1987) (rejecting the adequacy of a state court's determination of procedural default where "the court [chose] to ignore the fact that petition

[had] fully complied with the state's articulated procedural rules and simply deem[ed] the petitioner's claim waived.") Procedural default self-evidently is limited to cases in which a "default" actually occurred.  *Coleman v. Thompson*, 501 U.S. 722, 750 (1991).  Thus, where petitioner claims that the factual, rather than legal, underpinnings of his claim were determined unreasonably and the state court's factfinding can be rebutted by clear and convincing evidence, the adequate and independent state ground doctrine does not apply.  *See, e.g., Holloway v. Horn*, 355 F.3d 707, 713 (3rd Cir. 2004) ("we find no procedural default" where state supreme court "believed (mistakenly) that Holloway had not raised his *Batson* claim at the...trial level").[12]

Here the issue was "new."  The information about the jacket was based on information from a book published after the first motion for new trial had been filed, litigated, and denied.  It was not possible for petitioner to raise the issue, or for the SJC to consider the issue earlier, as the predicate facts were not yet known or knowable to the defense or any court.  There was no default.

As for the merits, the Commonwealth claims that the motion judge's conclusions were not contrary to or an unreasonable application of clearly established Supreme Court law, claiming that: (1) the jury was not exposed to extraneous evidence because the jacket was submitted as a properly admitted trial exhibit;  (2) even if the evidence was extraneous, it was not unfairly prejudicial because it was simply cumulative; and (3) there was no ineffective assistance by trial counsel regarding the jacket. (Comm. Mem. 49-50).  The Commonwealth is wrong.  Here, the stains themselves had been explicitly held inadmissible; they were not rendered admissible simply by being

---

[12]     *See also Sivak v. Hardison*, 658 F.3d 898, 906-907 (9th Cir. 2011) (state court finding of procedural default was "premised on an erroneous factual determination;""While it is unusual to reject a state court's use of a procedural bar on the ground that it was erroneously applied, '[t]he procedural default doctrine self-evidently is limited to cases in which a 'default' actually occurred.'"); *Boyd v. Ward*, 179 F.3d 904, 917 (10th Cir. 1999)(conducting "unreasonable determination" analysis pursuant to § 2254(d)(2) as to whether the testimony at trial entitled petitioner to certain jury instructions under state law in order to decide if counsel was ineffective in failing to request them).

attached to a proper piece of evidence. *Cf., Benjamin v. Fischer*, 248 F.Supp. 2d 251 (S.D.N.Y. 2002, *aff'd* 87 Fed. Appx. 761 (2d Cir. 2004). The Commonwealth bore the burden of proving that there was no prejudice. Since the "connection between then extrinsic information...and an issue material to and disputed throughout the trial" was extraordinarily high where the extraneous information fit precisely into the Commonwealth's theory of the case, the prejudice from this exposure was extreme. *United States v. Santana*, 175 F.3d 57, 67 (1999). The claim that the information was cumulative is flat wrong, as there was no discussion whatsoever in front of the jury regarding any cast off stains on the back of the jacket. Finally, trial counsel was ineffective because once the trial judge ruled that the stains on the back of the jacket were excluded, trial counsel should have ensured that the back of the jacket was either covered or removed, and his failure to do so allowed the jury to jump to their own inculpatory conclusions without any proper basis.

## CONCLUSION

For the reasons set forth herein, and for the reasons set forth more fully in his memorandum-in-chief, Dirk Greineder is entitled to federal habeas relief.

Respectfully submitted,
**DIRK GREINEDER**
By his attorney,

/s/ Catherine J. Hinton
Catherine J. Hinton, BBO #630179
151 Merrimac Street
Boston, MA 02114
(617) 720-0011
chinton@rankin-sultan.com

Dated:        August 29, 2016

## CERTIFICATE OF SERVICE

I hereby certify that this document was filed through the ECF system and will be sent electronically to the registered participants as identified on the Notice of Electronic Filing, including Susanne G. Reardon, Assistant Attorney General, counsel for the respondent in this matter, on August 29, 2016.  There are no non-registered participants involved in this case.

/s/ Catherine J. Hinton
Catherine J. Hinton, BBO #630179
